OPINION
Defendant-appellant Kevin D. Green appeals the November 13, 2001 Judgment Entry of the Delaware County Court of Common Pleas, which sentenced him to serve nine years in prison for his convictions on rape and sexual battery. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On December 13, 2000, Kristina Green was visiting her father, appellant, in Delaware County, Ohio. At the time, Kristina was seventeen years old. Michaela Lamb, a friend of Kristina's, went to appellant's residence to visit with Kristina. At the time, Michaela was sixteen.
During the course of the evening, appellant supplied the girls with beer, Zima, tequila, and other alcoholic beverages. Appellant made some statements demonstrating his physical attraction to Michaela. According to Michaela, appellant's statements were "perverted." Kristina heard appellant state Michaela was "a very pretty girl," and that "if he had been younger, [appellant] would try to be with her." Tr. 109, 157.
At some point during the evening, Michaela called her mother, Deeon Phillips, and asked if she could stay at appellant's house that evening. After speaking to appellant, Ms. Phillips agreed Michaela could spend the evening, and brought her a bag of clothes for school for the next day.
Appellant continued to drink with the two minors. Apparently, when the beer and Zima were finished, appellant fixed shots of tequila and melon balls for the minors.
Kristina left appellant and Michaela alone for approximately thirty minutes to one hour while she called her boyfriend in Colorado from a phone in another room. During this time, appellant maintains Michaela told him "she had liked older guys." Tr. 356. Between midnight and 1:00 a.m., the girls fell asleep on chairs in the basement of appellant's home.
When Michaela awoke, she was on the concrete floor with appellant on top of her. Her pants and underwear had been pulled down to her knees and appellant was having sex with her. Michaela maintained she did not consent to the sexual intercourse. When appellant finished, he left Michaela in the basement.
Michaela was very upset and her hysterical crying eventually woke Kristina. When Michaela told Kristina appellant had just raped her the two left the house to look for help. Because there had been some other emergency in the neighborhood, the girls found an ambulance just outside of appellant's residence.
Paramedics Angela Underhill and Mike Maher treated Michaela shortly after 1:00 a.m. Each noted Michaela was upset, crying, extremely distraught, and unable to catch her breath. Michaela told the medics she woke to find her friend's father having sex with her. She complained of pain in her vaginal area.
Sgt. Matthew Graham of the Delaware Sheriff's Office arrived at appellant's apartment at approximately 1:30 a.m. At that time, Michaela was being treated by the paramedics. Sgt. Graham went to appellant's apartment and inquired about the incident. Appellant told Sgt. Graham he did not know Michaela's name or age. Sgt. Graham testified appellant appeared nervous. Appellant told Sgt. Graham he did not have sexual intercourse with Michaela and if she had been raped, the girls must have let the perpetrator into the apartment.
Det. Sam Keckler interviewed Michaela at Grady Memorial Hospital at approximately 2:50 a.m. He noted Michaela was noticeably upset, crying, and hyperventilating. Michaela told the detective she had been at Kristina's house, that appellant had provided the girls with alcohol, and that she had passed out. She told Det. Keckler she awoke on the concrete floor, to find appellant on top of her, having sex with her. She described what appellant was wearing. Further, she told Det. Keckler she woke up Kristina and the girls left the apartment where they found the paramedics.
Vicki Ratliff, a sexual assault nurse examiner at Grady Hospital, examined Michaela after 2:00 a.m. She noted Michaela was upset, crying, and anxious. Nurse Ratliff noted Michaela had tenderness on her back and under her breasts. She further noticed abrasions to the labia minora, the cervix, and the clitoris. Ms. Ratliff also took swabs of a white milky discharge. Michaela told Ms. Ratliff she was asleep and awoke to find her friend's father inside of her, having sex with her.
Lynn Bolin, a forensic scientist from ECI, testified the DNA from the swabs taken from Michaela sexual assault exam matched the appellant's DNA.
On December 22, 2000, the Delaware County Grand Jury indicted appellant with one count of rape, in violation of R.C. 2907.02(A)(1)(a), one count of rape, in violation of
R.C. 2907.02(A)(2), and one count of sexual battery, in violation of R.C. 2907.03(A)(3). At his December 22, 2000 arraignment, appellant plead not guilty to the charges.
The matter proceeded to trial on October 30, 2001. After hearing all evidence, the jury found appellant guilty of rape, in violation of R.C.2907.02(A)(2), and one count of sexual battery, in violation of R.C.2907.03(A)(3). The jury found appellant not guilty as to the first count of the indictment, rape, in violation of R.C. 2907.02(A)(1)(a).
The trial court ordered a presentence investigation. On November 9, 2001, the trial court conducted appellant's sentencing hearing. At that time, the trial court found appellant to be a sexual oriented offender and sentenced him to nine years in prison on count two of the indictment. The trial court did not impose sentence on count three, finding it to be an allied offense of similar import.
It is from this judgment entry appellant prosecutes this appeal, assigning the following errors for our review:
 "I. THE COURT SUB JUDICE ABUSED ITS DISCRETION IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, 10 OF THE OHIO CONSTITUTION WHEN IT ADMITTED HEARSAY STATEMENTS OF MS. LAMB DURING THE TESTIMONY OF DETECTIVE KECKLER AS SAID STATEMENTS WERE NOT ADMISSIBLE UNDER O.EVID.R. 803(2).
 "II. APPELLANT'S DUE PROCESS AND RIGHT TO A FAIR TRIAL UNDER THE 5TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE PROSECUTOR, IN ITS CLOSING ARGUMENT, COMMITTED PROSECUTORIAL MISCONDUCT.
 "III. THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, 10 OF THE OHIO CONSTITUTION WHEN IT ENTERED INTO THE RECORD THE JURY'S VERDICTS FINDING APPELLANT GUILTY OF RAPE AND SEXUAL BATTERY AS SAID VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I
In appellant's first assignment of error, he maintains the trial court abused its discretion in overruling his objection to hearsay statements of Michaela elicited during the testimony of Det. Keckler. Appellant maintains these statements were not within the exceptions to the hearsay rule as contained in Evid.R. 803(2).
A trial court has broad discretion in determining whether relevant evidence can be admitted. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, paragraph two of syllabus. Absent an abuse of discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld. State v. Martin (1985),19 Ohio St.3d 122, 129, 19 OBR 330, 336, 483 N.E.2d 1157, 1164.
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless the evidence meets one of the recognized exceptions to the hearsay rule. Evid.R. 802. Evid.R. 803(2) allows the admission of hearsay under the "excited utterance" exception, which is defined as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." An excited utterance is one in which the declarant was under the excitement of a startling event and, therefore, the statement was not the product of reflection. State v. Taylor (1993),66 Ohio St.3d 295, 300, 612 N.E.2d 316, 320.
"There is no per se amount of time between the [occurrence and the statement] after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought. Therefore the passage of time between the statement and the event is relevant but not dispositive of the question." Id. at 303, 612 N.E.2d at 322. The fact the statements were not contemporaneous with the incident does not take it out of the excited utterance exception. State v. Baker (2000),137 Ohio App.3d 628, 739 N.E.2d 819, citing Warfield v. Greater ClevelandRegional Transit Auth. (July 7, 1988), Cuyahoga App. No. 54023, unreported.
Appellant specifically takes issue with the testimony of Det. Keckler, wherein the detective testified Michaela had informed him appellant raped her. The specific testimony in question is as follows:
"Q. What did she tell you?
 "A. Michaela had indicated that a friend of hers from Colorado named Kristina Green had flown into town and that they had — she had gone to her father's residence to spend some time with her, do some catching up, and that they had made plans for her to spend the night with her friend Kristina Green. And during the night Kristina Green's father, Kevin Green, had provided then with alcohol and she became intoxicated and passed out sometime after midnight.
 "She then indicated that she woke up, was awakened by — she indicated she had passed out, she believed in a chair, and then was awakened by Kevin Green on top of her. She was laying down on her back on the concrete floor in front of the washer and dryer and that Kevin Green was on top of her, having sex with her.
"Q. Did she tell you anything else?
"A. Objection.
"Q. Overruled.
 "A. Yes, she indicated that she had told Kevin Green to stop and that he did not, and that she believed that he had ejaculated and then finished. She indicated that he was wearing black sweat pants with white stripes on them — she described them as adidas-type pants, but didn't believe they were — a white sweat shirt and that after he had finished, he had got up and left the basement area * * *" Trial Transcript at 306-307.
Appellant first argues lack of spontaneity. Because the conversation took place at the hospital, between one and two hours after the alleged rape, appellant argues it could not have included spontaneous and impulsive statement given under the nervous strain of the alleged rape. Rather, appellant maintains the statements were made after reflective thought. Appellant bolsters this argument by pointing out Michaela's statements to Det. Keckler were made after Michaela had discussed the facts of the case with Kristina, and the two paramedics. Appellant also notes the statements given to Det. Keckler contain significantly more detail than the statements given to either Kristina or the paramedics. Appellant maintains the addition of this extra detail illustrates the statements were not given under the stress of the excitement of the event but, rather, were made after reflection. We disagree.
There is no set amount of time between the occurrence and the statement after which the statement can no longer be considered an excited utterance. Taylor, supra at 303. We note Michaela's statement to Det. Keckler was given approximately one hour and fifteen minutes after the rape occurred. However, Det. Keckler testified Michaela was "very noticeably upset. She was crying, sometimes to the point where she would, I would describe it as hyperventilating, that she couldn't catch her breath." Tr. 305. We find no abuse of discretion in the trial court's decision Michaela was still sufficiently under a state of excitement from the incident when she spoke with Det. Keckler.
Appellant also argues because Det. Keckler was able to obtain additional information from Michaela than she had given to either Kristina or the paramedics, her statements must have been the product of reflection. We disagree.
The admission of a declaration as an excited utterance is not precluded by questioning which is neither coercive nor leading, which facilitates the declarent's expression of what is already the natural focus of the declarant's thoughts, and does not destroy the domination of the nervous excitement over the declarence reflective faculties. Statev. Wallace (1988), 37 Ohio St.3d 87, para. 2 of the syllabus.
We agree with appellee, the fact Det. Keckler's questioning elicited additional information did not affect the admissibility of Michaela's statement as an excited utterance.
We note each of the individuals to whom Michaela related her story, including Det. Keckler found Michaela to be visibly shaken and upset. This state of emotional excitement, according to the testimony of Det. Keckler, did not cease, even upon his questioning of her in the hospital. In light of these facts, we find the trial court did not abuse its discretion in admitting Michaela's statements to Det. Keckler.
Appellant's first assignment of error is overruled.
 II
In appellant's second assignment of error, he maintains the prosecutor committed prosecutorial misconduct. Specifically, appellant maintains the prosecutor accused appellant of manufacturing a defense during his closing argument. We disagree with appellant's contention.
The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990), 51 Ohio St.3d 160, cert.denied 112 L.Ed.2d 596; State v. Smith (1984), 14 Ohio St.3d 13.
We further note appellant failed to object to the statement at trial. An error not raised in the trial court is waived and must be analyzed under a plain error analysis.
Crim.R. 52(B) provides:
 "(B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See: State v. Long (1978), 53 Ohio St.2d 91; State v. Cooperrider (1983), 4 Ohio St.3d 226.
Appellant specifically directs this Court's attention to appellee's rebuttal closing statement:
 "Thirty years ago, every sex offense (sic) the issue was who was there and whether or not it was consent. December 14th, that was his approach. They can't prove I was there. DNA, thank goodness we now know who was there. DNA says it's him. It's not that stranger that the girls must have let in. It's him.
 "Now, we have to rethink. We can no longer take the position that it wasn't me. I've got to come up with some story why I lied. That doesn't work anymore, because we know it was him. The only way you can acquit him is to make a reasoned decision that what he told you here today was the truth, even though he has told you that he purposely lied all the other times * * *" Tr. 419-420.
The record indicates appellant told investigating officers he did not know Ms. Lamb's name or her age. He further told officers he did not have sex with Ms. Lamb. These statements were later called into question by the testimony of Ms. Lamb and by DNA evidence. Accordingly, we find the prosecutor did not improperly comment on evidence not in the record and did not prejudicially effect appellant's substantial rights.
Because we find no error in the admission of the above referenced statements, appellant's second assignment of error is overruled.
 III
In appellant's third assignment of error, he maintains the trial court decision was against the manifest weight of the evidence. Specifically, appellant asserts the evidence did not demonstrate beyond a reasonable doubt he engaged in sexual conduct with Ms. Lamb by compelling her submission by force or threat of force, or that he knowingly engaged in sexual conduct with Ms. Lamb when she unaware that the act was occurring.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
The two crimes at issue in the matter sub judice are rape and sexual battery. Rape is defined in R.C. 2907.02(A)(2), and requires the State to prove appellant engaged in sexual conduct with another when he purposely compelled the other person to submit by force or threat of force. Sexual conduct is defined in R.C. 2907.01 to include vaginal intercourse between a male and female. Accordingly, in order to demonstrate appellant was guilty of rape, appellee was required to prove appellant purposely engaged in sexual conduct with Ms. Lamb by purposely compelling Ms. Lamb's submission by force or threat of force.
Count three of the indictment alleged appellant committed the crime of sexual battery in violation of R.C. 2907.03, which states, in pertinent part:
 "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 "(1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.
 "(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.
 "(3) The offender knows that the other person submits because the other person is unaware that the act is being committed."
The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. State v. Eskridge (1988), 38 Ohio St.3d 56.
Accordingly, in order to demonstrate appellant was guilty of sexual battery, the State had to prove appellant knowingly engaged in sexual conduct with an individual, not his spouse, where that individual submitted because she was unaware the act was being committed. At trial, Michaela testified appellant had vaginal intercourse with her while she slept, without her consent. In order to accomplish this, appellant had to remove Michaela from the chair where she slept, and carry her to a location behind the couch on a concrete floor. Appellant then removed Michaela's pants and underwear. We also note appellant provided the alcohol to the minor victim which caused her to pass out.
We find these facts sufficient to demonstrate appellant used force against his sleeping victim in order to compel her submission. Further, we find the record contains sufficient, competent, credible evidence upon which the jury could conclude appellant had also committed the act of sexual battery. We do not find the decision of the trial court to be against the manifest weight of the evidence.
Accordingly, appellant's third assignment of error is overruled.
The November 13, 2001 Judgment Entry of the Delaware County Court of Common Pleas is affirmed.
By: HOFFMAN, P.J. GWIN, J. and EDWARDS, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to appellant.